UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICHOLAS BRUNERO,

Plaintiff,

– *against* –

NOVAK VUKASINOVIC,

Defendant.

**OPINION & ORDER**

23-CV-6341 (ER)

RAMOS, D.J.:

Nicholas Brunero brings this action against Novak Vukasinovic, who is representing himself, alleging breach of a promissory note. Before the Court is Brunero's motion for summary judgment. Doc. 52. Brunero alleges Vukasinovic defaulted on a $100,000 payment owed to him under a promissory note executed by the parties. Vukasinovic disagrees that he owes any money under the promissory note, claiming he never received consideration under the promissory note and that, even if he had, Brunero owes him an even larger sum for services rendered. Because Vukasinovic has failed to refute Brunero's evidence that he is in default, there is no genuine issue of material fact. Plaintiff's motion for summary judgment is GRANTED.

# I. BACKGROUND

## A. Statement of Facts[1]

### *1. The Parties and the Real Estate Project.*

From 2016 to 2019, Nicholas Brunero and Novak Vukasinovic operated a real estate investment project (the "Project") to acquire a building located at 530 West 136th Street, New York, New York (the "Property"). Docs. 56 ¶ 4, 61 ¶ 2.

[1] The following facts are drawn from the parties' Rule 56.1 statements (Docs. 54 and 59), supporting exhibits (Docs. 55–57, 60–61, and 64), and pleadings (Docs. 7, 13–14). The facts are undisputed unless otherwise noted. Rule 56, Local Rule 56.1, and this Court's individual practices set forth various requirements for parties' submissions on a motion for summary judgment.

Before the Project, Brunero and Vukasinovic had already collaborated on several investments. Doc. 56 ¶ 3. Vukasinovic had significant real estate experience and had previously worked for large real estate financial institutions and private equity funds specializing in real estate. *Id.* Before agreeing to partner on the Project, Brunero had invested in three of Vukasinovic's real estate projects. *Id.*

Shortly before purchasing the Property on October 28, 2016, Brunero and Vukasinovic, among others, formed an LLC named Steeplechase Design-Build LLC ("SDB") to manage the Property. Doc. 7 ¶ 3; Doc. 56 ¶ 5l; Doc. 56-3 ¶ 3. Brunero, Vukasinovic, and Alexander Perros served as the managing members of SDB. Doc. 13 ¶ 4; Doc 56 ¶ 5; Doc. 61 ¶ 2. Perros had expressly represented to investors that the SDB team would perform general contracting and property management work in-house. Doc. 61 ¶ 21. Vukasinovic's role included these general contracting and property management responsibilities. Doc. 56 ¶ 5–6; Doc. 61 ¶ 20.

In November 2019, the initial loan used to purchase the Property came due. Doc. 56 ¶ 9; Doc. 57 ¶ 6. At that time, the Project was underperforming against expectations. Doc. 56 ¶ 6–7; Doc. 57 ¶ 7. Brunero, Vukasinovic, and Perros had already decided not to take fees or other amounts out of the project until all investors recouped their investments and SDB exited the Property. Doc. 56 ¶ 6–8; Doc. 56-4 at 2. In a February 2020 email, Vukasinovic noted all the "free work" he, Brunero, and Perros had invested to "save the investment." Doc. 56 ¶ 8; Doc. 56-5 at 2.

Because the Project was in financial distress, Brunero, Vukasinovic, and Perros decided to refinance the Property, which required significant additional capital. Doc. 7 ¶ 28; Doc. 56 ¶ 9; Doc. 57 ¶ 6. The group determined that the new investments would take the form of preferred equity that would receive a preferential rate of return to the original investments (the "Preferred Investment"). Doc. 56 ¶ 9.

*2. The Loan and the Promissory Note.*

Anticipating the refinancing later that year, Brunero and Vukasinovic corresponded about Vukasinovic's ability to invest in the Preferred Investment in April 2019. Doc. 56 ¶ 9; Doc. 56-7. Vukasinovic candidly shared his inability to invest additional equity given the state of his finances. Doc. 56-7 at 4–5. Brunero proceeded to outline the preliminary terms of a loan offer: Brunero would loan Vukasinovic $100,000 so that Vukasinovic "[got] to partake in the 6% preferred investment." Doc. 56 ¶ 12–14; Doc. 56-7 at 3–4. In the same email thread, Perros and Vukasinovic both acknowledged their understanding of Brunero's offer. Doc. 56-7 at 2. After the fact, Perros contended that the loan and Vukasinovic's stake in the Preferred Investment were meant to "recognize[] all the work [Vukasinovic] did over the years." Doc. 60-13; Doc. 61 ¶ 15. On October 19, 2019, Vukasinovic sent an email restating the terms of the offer: "here is where I am… We said that $100,000 would be loaned to me and that I would pay that back when I sold my property." Doc. 56 ¶ 16; Doc. 56-8 at 2. In that thread, Brunero and Vukasinovic went back and forth on their positions regarding the promissory note and Vukasinovic shared his preferences for its terms. Doc. 56-8. Vukasinovic now claims that Brunero told him the loan was necessary to finalize the refinance of the Property. Doc. 7 ¶ 39.

On October 22, 2019, Brunero sent Vukasinovic a draft of a promissory note (the "Note") and confirmed he was preparing to invest the $100,000 in Vukasinovic's name. Doc. 56 ¶ 18. Vukasinovic sent the signed Note back on November 5, 2019. Doc. 56 ¶ 19; Doc. 56-10. The Note was executed in favor of Brunero on November 6, 2019. Doc. 14 ¶ 6; Doc. 54 ¶ 1; Doc. 59 ¶ 1; Doc. 61 ¶ 10; Doc. 56-11 at 1.

By executing the Note, Vukasinovic unconditionally promised to pay Brunero $100,000 plus accrued interest. Doc. 56-11. The parties agreed that the loan was exclusively intended for Vukasinovic to partake in the Preferred Investment, and the Note directed Brunero to pay the loan proceeds directly to the Preferred LLC, the LLC through which the Preferred Investment was facilitated. *Id.* § 2. The Note specified that the loan

was personal to Vukasinovic, apart from his investment in Preferred LLC, and in no way contingent upon or tied to the performance of his investments in Preferred LLC. *Id.* § 6.8. Vukasinovic's obligation to make payment on the loan would occur on the maturity date. *Id.* § 3. In turn, the maturity date would be the earlier of the following: (1) the sale of or refinancing of debt on Vukasinovic's personal residence at 151 West 131st Street ("Residence"); (2) the sale of the refinancing of debt on the Property; or (3) upon proper notice following an event of default. *Id.* § 1. Failure to pay amounts owed under the Note would constitute an event of default. *Id.* § 9.1.

The Note also specified Brunero's remedy in the event of Vukasinovic's default. Interest was to accrue at the rate of 10% per annum but would grow to a default interest rate of 15% if Vukasinovic failed to make payment on the maturity date. *Id.* §§ 1, 4. The default interest would accrue from the date of non-payment until payment was made in full. *Id.* § 4.2. In addition to interest, Vukasinovic would reimburse Brunero for out-of-pocket costs, expenses, and fees (including attorneys' fees) incurred in connection with enforcement of Brunero's rights under the Note. *Id.* § 11.2. Upon Vukasinovic's default, Brunero could record a mortgage on Vukasinovic's Residence. *Id.* § 10. Vukasinovic would promptly provide Brunero with a title policy and a lender's title insurance insuring that the Mortgage created a continuing, valid lien on the Premises. *Id.* § 10.

Brunero funded the loan on November 5, 2019. Doc. 56 ¶ 21; Doc. 56-12 at 3. Brunero made a deposit of $320,000 into the Chase account of SDB, which Brunero and Perros claim represents $220,000 of his Brunero's own investment and $100,000 in Vukasinovic's name. Doc. 57 ¶ 9; Doc. 56-12 at 3. Brunero contends this is evidenced by records showing Vukasinovic's 3.865% interest in Preferred LLC. Doc. 64-2. Vukasinovic does not appear to deny that a transfer of $320,000 occurred. Doc. 59 ¶ 9. Instead, he points out that no records indicate any transfer to himself personally. *Id.*

After the loan was funded, Brunero and Vukasinovic discussed the Note at least once. In August 2021, Brunero reminded Vukasinovic that the loan was personal and raised

with Vukasinovic the possibility of paying back the loan faster to avoid the 10% interest. Doc. 56-13 at 2. In the context of that conversation, Vukasinovic stated "before we start emphasizing that I owe funds… I need to collect on what's owed to me for the services rendered." Doc. 60-13 at 5.

*3. The Refinancing of Vukasinovic's Residence.*

A few months later in December 2021, Vukasinovic refinanced the debt on his Residence. Doc. 7 ¶ 51; Doc. 14 ¶ 31; Doc. 59 ¶ 10; Doc. 61 ¶ 16. Vukasinovic and his wife executed a series of refinancing documents in favor of LoanDepot.com, LLC (the "Lender"). Doc. 14 ¶ 32; Doc. 56-16, 59 ¶ 11. These documents were recorded with the New York City Department of Finance, Office of the City Register, on March 7, 2022. Doc. 14 ¶ 34; Doc. 56-16.

In September 2022, Brunero contacted Vukasinovic to ask if he had refinanced his Harlem property. Doc. 56-14 at 2. Vukasinovic did not initially notify Brunero that there was a refinancing of the Residence and that the maturity of the Note had been triggered, or that he was in default of the Note. Doc. 54 ¶ 13. He replied, "I didn't refinance." Doc. 56-16 at 2. Two days later, Brunero sent an email recapping a phone call with Vukasinovic. Doc. 56-17 at 2. Brunero asked Vukasinovic multiple times what he did with the property and he repeatedly confirmed he did not refinance his Residence. *Id.* Brunero then read the refinance documents aloud, at which point Vukasinovic "admitted he's been lying all along." *Id.* Vukasinovic now admits that he refinanced the Residence on or about December 15, 2021. Doc. 59 ¶ 10.

From December 2022 to January 2023, Brunero and Vukasinovic exchanged emails regarding amendment of the Note. Doc. 56-19; Doc. 56-20; Doc. 56-21. The parties discussed at length how the Note should be amended to protect each of their interests. Doc. 56-19; Doc. 56-20; Doc. 56-21. Vukasinovic wrote, "I am in default of the Promissory Note" on January 18, 2023. Doc. 56-21 at 3. In March 2023, Brunero contacted Vukasinovic urging him to return his thoughts on the draft agreements and warning

Vukasinovic that it appeared he was delaying intentionally. Doc. 56-24 at 2. Informal settlement talks broke down later that month. Doc. 56-25.

*4. The Parties' Requested Relief.*

Brunero alleges Vukasinovic has failed to make payment under the Note despite demands from Brunero. Doc. 14 ¶ 47, 52. Brunero seeks damages (including punitive damages), specific performance permitting him to record the mortgage on the Premises, award of the costs and disbursements of this action, including his reasonable attorneys' fees and court costs, and any other award the Court deems proper. Doc. 14 at 10.

Vukasinovic claims that he owes no payment to Brunero because he never received the $100,000 under the Note. Doc. 61 ¶¶ 4, 13–14. In addition, he says that he has never been compensated for the work he did at the Property and seeks these amounts now. Doc. 7 ¶ 15. Vukasinovic claims he is owed over $240,000 for services rendered from October 2016 to February 2020. Doc. 7 ¶¶ 15–18. Vukasinovic seeks dismissal, transfer of the $100,000 made in Vukasinovic's name to Brunero, and Brunero's arrangement of "a process whereby the Real Estate Investment Project and the Property pay full moneys owed to Novak," or in the alternative, additional issuance of equity stakes to Vukasinovic. Doc. 7 ¶ 55.

**B. Procedural History**

Brunero initially filed his complaint on July 21, 2023, alleging breach of a promissory note. Doc. 1. Vukasinovic answered the initial complaint on August 14, 2023, and later amended the answer on November 14, 2023. Doc. 7; Doc. 13. Brunero filed a First Amended Complaint (the "FAC") on November 17, 2023, adding a second cause of action for specific performance of the promissory note. Doc. 14. Vukasinovic has not responded to the FAC.

On September 22, 2023, the Court set a discovery plan ordering all discovery due by January 11, 2024. Doc. 12. Since then, a lengthy dispute over discovery issues has persisted. *See, e.g.*, Doc. 17 (Brunero's motion to compel discovery); Doc 24

(Vukasinovic's request to submit evidence); Doc. 27 (Brunero's letter requesting a case management conference); Doc. 29 (Vukasinovic's request for an extension of time to produce discovery); Doc. 36 (Brunero's letter involving discovery dispute). The Court has intervened on many occasions to no avail. *See* Doc. 25 (ordering that Vukasinovic submit discovery to his adversary properly); Doc. 26 (compelling discovery); Doc. 31 (ordering that Vukasinovic produce responsive documents and interrogatory responses); Doc. 35 (ordering that the parties communicate directly regarding discovery disputes).

On December 15, 2025, Brunero requested leave to file a motion for summary judgment. Doc. 50. Brunero contends that Vukasinovic still has not cured his discovery deficiencies, but "proceeds with this summary judgment motion in order to avoid wasting further judicial and legal resources." Doc. 53 at 12. The request was granted. Doc. 51.

## II. LEGAL STANDARD

### A. Rule 56(a).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the movant is the plaintiff, he is required to "show, as a matter of law, that he can establish all elements of his claim by a preponderance of the evidence and that no questions of material fact exist for a jury to decide." *Farrell v. Burke*, No. 97 Civ. 5708 (DAB), 2004 WL 2813175, at *3 (S.D.N.Y. Dec. 8, 2004), *aff'd*, 449 F.3d 470 (2d Cir. 2006). In other words, a plaintiff who moves for summary judgment must show that "its

own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998).

A plaintiff who moves for summary judgment "must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing." 10A *Wright & Miller's Federal Practice & Procedure* § 2727.1 (4th ed. 2026). "If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response." *Id.*; *see, e.g.*, *Peterson v. Pan Am Railways, Inc.*, No. 12 Civ. 1857 (LEK), 2015 WL 2451227, at *8 (N.D.N.Y. May 21, 2015) (noting that the plaintiff's failure to "undisputably establish" an "essential element of [his] claim" was "fatal to [his] [m]otion for summary judgment"). If, however, the movant meets his initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

Finally, the Court notes that Vukasinovic is proceeding pro se. Thus, his "submissions . . . must be construed liberally and interpreted to raise the strongest

arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted). This "does not," however, "relieve [Vukasinovic] of his duty to meet the requirements necessary to defeat [Brunero's] motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *Jorgensen v. Epic/Sony Records*, No. 00 Civ. 9181 (JFK), 2002 WL 31119377, at *2 (S.D.N.Y. Sept. 24, 2002)).

**B. Recovery on a promissory note.**

Under New York law, "to make out a prima facie case for recovery on a promissory note 'a plaintiff must simply show proof of a note and failure to make payment.'" *Breco Equities, LLC v. Whitehead*, No. 22 Civ. 8683 (NRB), 2023 WL 5180141, at *3 (S.D.N.Y. Aug. 11, 2023) (emphasis omitted). The burden then shifts to "to prove the existence of a defense against the note creating a triable issue of fact." *Id.* (citing *Beaufort Cap. Partners LLC v. Oxysure Systems, Inc.*, No. 16 Civ. 5176 (JPO), 2017 WL 913791, at *2 (S.D.N.Y. Mar. 7, 2017).

Actions for recovery on a promissory note are appropriately decided by motion for summary judgment. *Camofi Master LDC v. College Partnership, Inc.*, 452 F. Supp. 2d 462, 470 (S.D.N.Y. 2006). But summary judgment is only appropriate in an action on a promissory note upon a showing of no material questions regarding execution and default. *Spahn v. Spahn*, No. 24 Civ. 4035 (ER), 2025 WL 835962, at *3 (S.D.N.Y. Mar. 14, 2025). A bona fide defense requires showing admissible evidence of "a genuine and substantial issue rebutting holder's entitlement to payment." *Camofi*, 452 F. Supp 2d at 471. A "stringent standard" applies to evaluating a defense to a negotiable instrument among "sophisticated business people." *Id.* (internal quotations omitted).

## III. DISCUSSION

**A. Brunero has made a prima facie case for enforcement of the Note.**

Brunero has easily shown proof of a Note and Vukasinovic's failure to make payment. There is no dispute over Vukasinovic's execution of the Note or the Note's

contents. *See* Doc. 59 ¶ 1; Doc. 61 ¶ 10. Vukasinovic does not dispute that Brunero transferred $320,000 to Preferred LLC, which Brunero says included $100,000 in Vukasinovic's name and resulted in Vukasinovic's 3.865% interest in Preferred LLC. Doc. 59 ¶ 9. Nor does Vukasinovic dispute that he refinanced the Residence in December 2021. Doc. 7 ¶ 51; Doc. 14 ¶ 31; Doc. 59 ¶ 10; Doc. 61 ¶ 16. Due to the refinancing of the debt on the Residence, the Maturity Date of the Note was December 15, 2021, and all payments due under the Note came due on such date. *See* Doc. 56-11 ¶¶ 1, 3. Vukasinovic admitted he was "in default of the . . . Note" on January 18, 2023. Doc. 56-21 at 3. Because Vukasinovic concedes both execution and default, Brunero has made a prima facie case for recovery on the Note.

**B. Vukasinovic has failed to prove the existence of a defense against the Note.**

Vukasinovic advances two arguments defending against the execution of the Note. Vukasinovic claims that (1) no repayment obligation has been triggered because he did not personally receive the loan funds, and (2) he is entitled to set-off in the amounts he is owed for services rendered. *See* Doc. 59; Doc. 61. Neither of these arguments create a bona fide defense nor do they preclude summary judgment in Brunero's favor.

*1. Personal receipt of the loan proceeds was not required by the Note.*

Vukasinovic, at times, disputes that the loan was funded or that consideration was delivered. Doc. 59 ¶¶ 1–6. He claims that he owes no payment to Brunero because he never received the $100,000 under the Note. Doc. 61 ¶¶ 4, 13–14. Lack of consideration for a note is certainly a bona fide defense to payment thereof. *Samet v. Binson*, 996 N.Y.S.2d 149, 150 (2d. Dep't 2014). But Vukasinovic appears to believe that for the Note to be enforceable, the loan funds must have been disbursed to him personally.[2] The terms

[2] Vukasinovic claims that where "funds are invested in a project rather than transferred to an individual borrower, consideration for a personal promissory note is lacking as a matter of law." Doc. 62 at 3. Vukasinovic cites to *Banco Espírito Santo de Investimento, S.A. v. Citibank, N.A.*, 110 A.D.3d 450, 451 (1st Dep't 2013) in support for such a proposition. *Id.* The Court has been unable to find a case bearing this caption and docket number.

of the Note were clear: Brunero was directed to pay the loan proceeds directly to the Preferred LLC. Doc. 56-11 ¶ 2. And Vukasinovic does not dispute that Brunero transferred $320,000 to Preferred LLC in exactly the manner directed by the Note. Doc. 59 ¶ 9. As a result, Vukasinovic does not show a lack of consideration, does not rebut Brunero's entitlement to payment, and does not preclude summary judgment.

*2. Vukasinovic cannot set off his obligations on the basis of services rendered.*

In what appears to be another defense, Vukasinovic claims that because he has never been compensated for the work he did at the Property, he should be able to set off these amounts now and receive them either in cash or additional equity in the Preferred Investment. Doc. 7 ¶¶ 15, 55. Vukasinovic claims he is owed over $240,000 for services rendered from October 2016 to February 2020. Doc. 7 ¶¶ 15–18. The set-off defense, which the Court notes has not been formally brought as a counterclaim, fails for many reasons.

Even if true, the existence of a debt owed by Brunero to Vukasinovic would not constitute a bona fide defense to enforcement of the Note. *See National Union Fire Insurance Co. of Pittsburgh, PA. v. Keenan*, No. 93 Civ. 6784 (LLS), 2005 WL 736233, at *2 (S.D.N.Y. Mar. 31, 2005) (holding that defendants' assertions were conclusory pretexts that failed to refute the prima facie case for recovery). The fact of the debt itself does not cast doubt on the Note's execution or Vukasinovic's default, therefore the claim fails to refute the prima facie elements for Brunero to recover under the Note.

A breach of a related contract is generally not a defense to nonpayment of a promissory note. *Fitzpatrick v. Animal Care Hospital, PLLC*, 962 N.Y.S.2d 474, 478 (3d. Dep't 2013). An exception exists where a note and a contract are "inextricably intertwined" as part of the same transaction and a breach of the related contract may create a defense to payment. *Id.* But Vukasinovic has not made a showing indicating he was entitled to offset his obligations due to the services he rendered. Vukasinovic does not claim to have reached any agreement with Brunero permitting set-off in the way he proposes, nor does he produce

any agreement compelling payment for his services by anyone. Instead, the record shows Vukasinovic's understanding that he was deferring payment for some unspecified period. Doc. 56 ¶ 7–8; Doc. 56-4 at 2; Doc. 56-5 at 2. Vukasinovic does not show that Brunero breached an agreement that is inextricably intertwined with the Note and justifies set-off.

Finally, Vukasinovic admits that Brunero is not the proper party to seek payment from for this debt. To set-off against a promissory note, there must be mutuality, that is, debts "must be due to and from the same persons in the same capacity." *General Electric Capital Business Asset Funding Corp. v. Hakakian*, 776 N.Y.S.2d 576, 577–78 (2004). The Note clearly lists the parties as Brunero and Vukasinovic. Doc. 56-11 at 2. Here, Vukasinovic's demand for relief seeks for Brunero to arrange "a process whereby the Real Estate Investment Project and the Property pay full moneys owed to Novak." Doc. 7 ¶ 55. In other words, Vukasinovic himself acknowledges that the payment for services rendered is not due to him by Brunero. Because there is no mutuality, there can be no set-off.

**C. Plaintiff is entitled to specific performance, attorneys' fees, and court costs.**

Brunero seeks specific performance of the Note, permitting Brunero to record a mortgage on the Residence for the balance on the Note at the time of filing plus interest accruing at a rate of 15% thereafter until Vukasinovic pays the amounts due and owing. Doc. 14 at 10. Brunero also seeks to require Vukasinovic to perform his obligation to provide title insurance and pay costs. *Id.* Brunero seeks these remedies as both a second cause of action and as a form of relief. *Id.* at 8–10.

"District courts may grant summary judgment under Rule 56(a) as to equitable relief where there is no disputed issue of material fact." *Brunckhorst v. Bischoff*, No. 21 Civ. 4362 (JPC), 2026 WL 2267716, at *3 (S.D.N.Y. Aug. 6, 2026) (citing *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 740 (2d Cir. 2010)). In cases like the instant case, courts typically dismiss stand-alone specific performance claims but permit a plaintiff to seek specific performance as a remedy for the breached contract.

*Camelot SI, LLC v. ThreeSixty Brands Group LLC*, 632 F. Supp. 3d 471, 487 (S.D.N.Y. 2022) (collecting cases). Here, Brunero seeks specific performance as a remedy for the breached promissory note apart from the second cause of action. Accordingly, Count II of the FAC is dismissed but the Court will separately consider whether specific performance may be granted.

"Under New York law, specific performance may be granted when (1) a valid contract exists; (2) the plaintiff has substantially performed under the contract, and is willing and able to perform any remaining obligations; (3) the defendant is able to perform its contractual obligations; and (4) the plaintiff has no adequate remedy at law." *Id.* at 486 (quoting *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 113728, at *4 (S.D.N.Y. Jan. 13, 2014)). "[B]efore the 'extraordinary' equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice." *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002).

Brunero is entitled to specific performance of the Note and its remedies clause. All necessary factors for specific performance to be granted are met here. There is no dispute that the Note was executed nor is there any dispute as to its contents. *See* Doc. 59 ¶ 1; Doc. 61 ¶ 10. Brunero fully performed under the Note by making the $100,000 payment to Preferred LLC in Vukasinovic's name. Doc. 56 ¶ 21; Doc. 56-12 at 3; Doc. 59 ¶ 9. Vukasinovic has not shown or indicated that he would be unable to fulfill his contractual obligations. And finally, Brunero has shown that there is no adequate remedy at law. "When specific performance is contemplated by the contract, courts tend to find that irreparable harm would be suffered unless specific performance is granted." *Wells Fargo Bank, N.A. v. Bank of America, N.A.*, No. 11 Civ. 4062 (JPO), 2013 WL 372149, at *8 (S.D.N.Y. Jan. 31, 2013) (collecting cases). The Note clearly permits Brunero to seek recovery in the form of a recorded mortgage creating a continuing and valid lien on Vukasinovic's Residence. Doc. 56-11 § 10.

The Note executed by Vukasinovic expressly permits Brunero to record this lien for an amount including all "title insurance premiums, recording and filing fees and charges and other expenses incurred by [Brunero] in connection with the recording of a mortgage." Doc. 56-11 ¶ 10. As such, Brunero is entitled to record the mortgage including the amounts for Brunero's reasonable attorneys' fees and court costs as provided for in the Note.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 52, and enter judgment.

It is SO ORDERED.

Dated: September 30, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.